Next case on the calendar is United States v. Polanco. We have Mr. Boyle for Mr. Polanco, and you can begin whenever you're ready, Mr. Boyle. Thank you, Your Honor. May it please the Court, my name is Robert Boyle, and I represent Jason Polanco. As this Court has said many, many times, the essence of a conspiracy charge is the agreement to engage in the unlawful acts of that conspiracy and the intent to do so. In this particular case, there was no evidence, there was legally insufficient evidence that Mr. Polanco agreed to become part of the Ruiz-Gonzalez heroin conspiracy. And because of this, his conviction under count one should be vacated and dismissed, and also the convictions of the 924J count and the 848 count should also be dismissed because participation in that count one conspiracy was a necessary element of both of those two counts. Let's see if we can agree on what the evidence was, then we'll talk about it. Absolutely. Go ahead. I'm sorry. Go ahead. Is that what you're going to do? Go ahead. Yes. You're going to summarize what was the evidence that he was part of the Ruiz-Gonzalez conspiracy? Well, first of all, there was no evidence that he Well, there was evidence he was selling marijuana on the block controlled by this heroin drug organization. Fair? He operated an independent marijuana sales business. That's the whole issue, whether it was independent or not. There was testimony by the cooperators and the district judge found that there was a symbiotic relationship between his sale of marijuana on the block and the heroin organization, that he alerted them to law enforcement. There was testimony about that. They referred customers to him when there was any issues about enforcement on the block. It would be handled by Gonzalez and Ruiz. So you're calling it an independent operation, but there was a lot of evidence in the record from the cooperators that they worked side by side and hand in hand. Right. Well, let's let's talk about what that evidence actually was. We have Mr. Correa. First of all, the issue of the lower court's determination in the Rule 29 that Mr. Polanco acted as an enforcer. There was no evidence of that. They point to two specific instances. One was that he beat up this guy called Obama. But Obama was selling marijuana on the block, which was Mr. Polanco's business. So he didn't assault, and I'm certainly not defending the assault on anyone, this person, Obama, for Ruiz and Gonzalez. He was doing it for his own heroin, for his own marijuana business. In addition, they talk about how, excuse me, and I'm just overcoming a cold and I'm struggling through this myself. There was the issue of whether they steered clients, customers to each other. There was no evidence that Mr. Polanco ever steered client, ever steered customers to the Ruiz-Gonzalez heroin operation. Mr. Correa and Mr. Kemp both testified to that. That just simply did not happen. The only person who said that he directed marijuana potential customers to Mr. Polanco was Mr. Correa. And Mr. Correa said, well, when somebody came up to me and said they were looking for marijuana, I said, I don't have it. That guy over there does. I would submit that that's similar if you go into a store and you're looking for a certain product and the proprietor says we don't carry that, but the store down the street does, he's certainly sending them to another place, but they're not part of the same business. But isn't there, I mean, certainly the evidence about the relationship between Mr. Polanco and the fact that he is being permitted to sell drugs, admittedly marijuana, on this block, that he does have a relationship with the members of, who are selling the drugs, that they do complement each other in calling out when there are police on the block, and the fact that when there was this incident with Ross, that Mr. Polanco goes to the Ruiz people to kind of talk about, look, this guy is on the block and he's disrespecting me or disrespecting the block or what have you. Certainly there are multiple inferences that could be made from that, but why would that be, why is that not enough to establish that he is in fact a part of this conspiracy? Let me address each of those, Your Honor. He could sell marijuana on the block because, as Mr. Correa testified, not because he was a member of the Ruiz-Gonzalez organization, but because he lived on the block, and that selling marijuana did not, and this is the words of cooperator Tristino, did not step on Gonzalez's toes. So he was permitted to do so because it didn't interfere with the heroin operation. There was also the issue of people yelling snag when police came on the block. Well, Mr. Polanco is selling marijuana there. Two of his workers, identified by Mr. Kemp as Denise and Jessica, are selling marijuana on the street for Mr. Polanco. So when he sees police come down on the street, he may yell snag or something else because he's protecting his own business. He's not protecting the Ruiz-Gonzalez business. It may have the effect of that, but it's certainly not an intentional act to protect the Ruiz and Gonzalez conspiracy. With respect to the Ross murder, and no one here is defending the murder of this young man, but the evidence was that it was a spontaneous act. There were two- Was it spontaneous? I mean, why does he go to, I guess, Gonzalez first, almost as if notifying him or seeking permission, and it's only after Gonzalez says, well, you know, if you want to do something, do something, or something to that effect, that this actually occurs. It wasn't as if he had an interaction with Ross and then he just, this happened, the violence happened. Well, there was what happened prior to that when Ross came to the block and both witnesses, Kemp and Correa, said he's drunk and wilding out, and he makes what apparently Mr. Polanco felt was disparaging remarks about Puerto Rican people, of which Mr. Polanco was. No, I know that's your argument, but I went back and looked at Mr. Correa's testimony. What he said was he had a rolling bag that he thought, he was suggesting he had a gun in the bag and was saying, I don't trust all of you Puerto Ricans, you stick together, which Mr. Correa understood was a reference to this ongoing, you know, violence that was back and forth, the two incidents that occurred prior to that date. So the conversation wasn't some random conversation about disrespecting Puerto Ricans. It was a conversation about having a gun, trying to intimidate essentially the drug organization that the government argues that your client was identifying with, and that's why he brought it to Mr. Gonzalez, who gave him a gun to commit it, right? So I understand your argument, but we have to draw all the inferences in the government's favor. So why isn't there at least a reasonable inference that this was not some personal dispute between your client and Mr. Ross, but was a disrespect of the heroin drug organization that your client was a part of? So he went to Mr. Gonzalez for permission. Mr. Gonzalez was sort of ambivalent in his response, but then handed him a gun. So why isn't that enough for a jury to conclude this was done on behalf of the larger heroin organization? Well, first of all, I mean, I agree with the court about the bag and the gun in the bag and what Mr. Ross had said. But prior to that, and immediately after that, or within a few minutes of that, Mr. Polanco is in the deli. Mr. Gonzalez comes to the deli. Mr. Polanco, according to Correa, advises him about what happened with Mr. Ross. Mr. Gonzalez says, why are you telling me for? If this was an order to kill Ross, he would have just said so. Instead, he says, why are you coming to me for? Handle your business. It's your business. And Mr. Kemp testifies that saying that doesn't mean that he was going to a direction to murder Mr. Ross. Right? He said, well, that means that Mr. Polanco could decide to do whatever he wanted to do. Isn't there a difference between direction and permission? Couldn't that be interpreted as permission? You can do what you want. You have my permission. If you think this is disrespecting the organization, the block, you can do it. I don't think there's an inference of permission with that. I would submit to the court, respectfully, that when he says, why are you bothering me with it, he's annoyed. So why did he go to him in the first place if he wasn't seeking permission? I don't understand. Why would he have gone to him in the first place? It's a purely private dispute that had nothing to do with the Gonzales-Ruiz organization. Why would he have gone to them? I don't think he actually went to him. My client, Mr. Polanco, was in the deli. Gonzales comes into the deli. Everyone comes in and out of that deli, apparently, all the time. So he didn't then, after the incident with Mr. Ross and the disparaging remarks, run to Mr. Gonzales. Gonzales is there. They're all around that block. And he tells him... Why did Mr. Gonzales give him the gun? Why did Mr. Gonzales give him the gun if it had nothing to do with the drug organization? This is your own problem. You deal with it. And he walks away. But he gives him a gun, the guns that are used to protect the heroin business, right? The gun is used to protect the heroin business. But in terms of why Mr. Gonzales gave him the gun, he didn't say... Here's the gun. Go deal with Mr. Ross. He said, handle your business the way you want to handle it. And I'm paraphrasing that. So it wasn't a direction or a permission to commit this murder. All right. You have two minutes in rebuttal. Thank you. May it please the court, my name is Danielle Sassoon and I represent the United States on appeal as I did at the trial. Judges Lee and Bianco, you're exactly right. The question here is whether a rational juror could conclude that the defendant was guilty of the charges. And here the evidence went well beyond what a rational juror could conclude. As Judge Engelmeyer found, the drug-related nexus was circumstantially obvious in this case. And the murder could not sensibly be understood as anything other than in connection with this ongoing drug dispute between the Gonzales crew and the crew with which Sean Ross was associated. I think he said it was not a lemonade stand. That's correct, Your Honor. And appellant argued that there was no evidence that Mr. Polanco was an enforcer. But, of course, the murder itself, as Judge Engelmeyer found, was itself compelling evidence of his role as an enforcer. And under Santos, the commission of the murder itself was sufficient to establish his role in the conspiracy given the circumstances and the overwhelming evidence that shows that it was perpetuated in connection with this case. And, of course, the murder itself, as Judge Engelmeyer found, was itself compelling evidence to establish his role in the conspiracy given the circumstances and the overwhelming evidence that shows that it was perpetuated in connection with this case. Can I just ask you, I mean, one thing that I'm just wondering about with regard to, you know, perhaps this is a question of conspiracy law in general. But the idea that certainly there's evidence to, in my view at least, to suggest some kind of affiliation, connection, what have you. But as part of the count that he's, the conspiracy count relating specifically to the selling of heroin. I mean, the standard is he, a participant in the conspiracy is supposed to have the specific intent to commit, I guess, the object of the conspiracy to sell heroin. And so to the extent that certainly the evidence, to my mind, suggests a connection and affiliation. I mean, what is the evidence that supports he had the specific intent to sell heroin with regard to, I don't know, I guess that's the first count. But the idea that there's specific intent here as opposed to a connection, an involvement in the gang, something of that sort. Yes, Your Honor. So I believe the government just had to show that he had the intent to further the conspiracy. Well, further the object of the conspiracy, which is, as charged in that count, to sell heroin. Correct, Your Honor. And the evidence supported the conclusion that by committing the murder of Sean Ross at the urging of Freddie Gonzalez and with Freddie's weapon, that was kept on the block to protect the crew, that he knowingly... Well, is it fair to characterize it as at the urging of Gonzalez? I think the record suggests that Gonzalez was, you know, certainly, I guess, to the extent he gave him the gun, he facilitated it. But the testimony about what he said doesn't suggest that Gonzalez urged it, does it? I think a jury could fairly conclude that he was urging the murder, both by handing the weapon in conjunction with what he said, and in a way it was a challenge. Are you tough? Are you going to do this? Are you going to prove yourself for the sake of this crew? And Polanco had an interest in protecting the heroin business because he benefited from Freddie and Renee's protection. There was evidence in the record that when he had his own dispute with a marijuana dealer named Obama, Freddie stepped in on his behalf. And so Polanco had an interest in Freddie and Renee maintaining their business on the block and maintaining their dominance, which both Sean Ross threatened and Renee and others in his... Sorry, Gada and others in his crew had threatened. In addition, I want to point out that Judge Engelmeyer here actually gave the jury a multiple conspiracies instruction. So the jury was specifically informed that they had to find that Polanco was not only a member of a drug conspiracy, but this particular conspiracy with heroin as its object. And the jury found Polanco guilty of participating in that conspiracy. And just to go back to your original question, this circuit in Santos made clear that the act of committing an act of violence on behalf of a drug conspiracy can evince the necessary intent to further the underlying object of that conspiracy. But in that same case, we said that alone can't be enough. There has to be some circumstantial evidence to support that. Just the act of violence in itself wouldn't... Right? Didn't we say that in that same case? Yes, Your Honor. And I think both the circumstances of the murder, but also the symbiotic nature of the marijuana and heroin business, which Judge Bianco, you highlighted at the outset, is enough to show that he had that intent. He was on that block from morning to night, as Correa testified, standing alongside the dealers in Freddie's crew, both selling marijuana, but also engaging in mutual assistance with the members of Freddie's crew, alerting them to police, sharing the same deli from which they operated and stored drugs, and then ultimately taking the conspiracies gun to perpetuate. And was my understanding of the conversation that Correa recounted correct in terms of the inference of the gun in the bag and a reference to not trusting everybody? In other words, it wasn't a discussion about the marijuana business. It appeared to be a discussion about the larger issues of the war on the block. Is that accurate? Yes, Judge Bianco. So the sequence of events was, as you said, Sean Ross coming up the block with a bag and implying that he had a gun in the bag, returning to, which they took as a taunt, returning to the block about 20 to 30 minutes later and having a conversation with Correa with an earshot of Mr. Polanco, where he essentially discussed feeling discomfort around their crew, alluding to the ongoing beef between the GATA crew and Freddie's crew. Polanco heard that. When Freddie came to the block, he reported the incident to Freddie, which can reasonably be understood as someone within the conspiracy apprising the leader of an issue and of this threat, and Freddie responding then by providing him the gun and implying an expectation that he handle it. Unless the court has any further questions, we'll rest on our submission. Thank you. Mr. Boyle, you have two minutes in rebuttal. Two things, Your Honor. Freddie did not step in with respect to the beatdown of Obama. He wasn't even present. There was testimony that after that happened, he spoke to Obama's boss, but there's no proof as to what was said in that discussion, so we can't, it would be speculative that it had anything to do with that. And just one thing with respect to the Santos case, in Santos, the defendant, he was, I believe, brought in to kidnap someone. I'll just go back to the other point. Isn't there an inference that if he had a discussion with Obama's boss, Freddie did, and then Obama never came back to the block, couldn't the jury draw an inference that that related to not selling the drugs on the street, the marijuana? Isn't that a reasonable inference? It still all had to do with the marijuana. And in this case... I know, but it shows that Freddie was involved in protecting the marijuana business. That was the point of, I think, the government relying on that, right? It wasn't an independent operation. If there was some issue about who was selling marijuana on the block, Freddie would intervene. With respect, I don't think it's fair. I think it's speculation in that particular conversation. And just one final thing. This case, it's remarkable that Mr. Correa, Mr. Kemp, and Mr. Tristino, the government's cooperating witnesses, are very firm in their testimony that Polanco only sold marijuana. Ruiz-Gonzalez only heroin. There's no money going back and forth with respect to any of that. And it's two different businesses. And so I would respectfully submit that notwithstanding the shooting, that this case, there was insufficient evidence on the conspiracy count and also the two other counts that should be dismissed. Thank you very much. Thank you, Mr. Boyle. Thank you, Ms. Sassoon. And we'll reserve decision. Have a good day.